JAMES M. COCKERHAM, et ux *v.* THE CHILDREN'S AID SOCIETY OF CECIL COUNTY

[No. 53, January Term, 1945.]

*Decided June 28, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Louis S. Ashman,* with whom was *Harry D. Barnes* on the brief, for the appellants.

*Henry L. Constable* for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

Appellants, father and mother of a daughter, now eighteen months old, filed a petition under Flack's Anno-

tated Code, 1939, Article 42, Section 21, for a writ of habeas corpus, directed to the appellee, to secure the custody of their child, previously committed to the appellee by a trial magistrate of Cecil County. After a hearing in the Circuit Court for Cecil County, Judge Constable remanded the child to the custody of the appellee, subject to the further order of the Court. The case comes here on appeal from this order. There are no questions of law involved, and the sole question for our determination is whether, on the testimony taken and at the time the case was heard, the order of the lower court was correct.

Section 21 of Article 42 provides that when such a case as the present is brought, the Court or Judge in its determination "shall be guided and controlled by a parental consideration of what is demanded by the best interest of such minor, and the custody shall be determined without regard to technicalities of procedure and without reference to any alleged technical claim or right of custody." The Section has been construed and passed upon in three recent cases, *Tull v. Tull,* 172 Md. 213, 191 A. 572; *Piotrowski v. State ex rel. Kowalek,* 179 Md. 377, 18 A. 2d 199; and *De Angelis v. Kelley,* 184 Md. 183, 40 A. 2d 382, and it is not necessary to discuss it further. In view of its provisions, we will not consider the authority of the magistrate to commit the child to the care of the appellee in the first instance, as any possible technical defect in such commitment has been cured by the order appealed from. Nor can we, under the statute, give any weight to the fact that the appellants are the natural guardians of the child. The sole question is her welfare.

The child was born on August 7, 1943. According to the testimony of the father, the mother went back to work about three or four weeks later. The testimony is not quite clear who took care of the child immediately after the mother went back to work, but there is some indication that an older woman was in charge of it at home. The Secretary of the Cecil County Welfare Board testified that on January 31, 1944, the father asked the

Welfare Board if there was any place where he could board the baby. As a result the authorities found a place for it in Elkton. The family with which it was placed moved to Sparrows Point and then to Detroit, taking the child with them. As soon as the mother learned of its removal, she went to Detroit, and brought the child back. The people who took it to Detroit had it about five months. It was brought back in July, when it was about eleven months old. On the 13th of that month the father came in to see Miss Evans of the Children's Aid Society, and, according to her very definite and clear evidence, he wanted to put the child in a foster home, saying that the mother was working and did not take care of the baby, that he was taking care of it, and he was afraid to leave it with the mother for fear she might harm it. Mr. Cockerham now denies this. On July 12th, the day before Mr. Cockerham's visit, Mrs. Cockerham had sworn out a warrant for Mr. Cockerham, charging him with assault and battery on her. He was subsequently tried before the magistrate and found guilty, but his sentence was suspended. On July 13th, the same day as his visit to the Children's Aid Society, Mr. Cockerham swore out a warrant for Mrs. Cockerham, charging her with disorderly conduct, and with disturbing the peace. She was arrested and kept in jail in default of bail for about seven hours. She was released when her husband declined to prosecute. Mrs. Coles, the secretary of the County Welfare Board, was present at the hearing of Mr. Cockerham's case, and as a result of this and of her conversations with the family, she swore out a warrant on July 17th for the child as a minor without proper care. And on the 18th of July it was committed to the appellee. Appellants both signed an agreement on that date to pay for the child and made no objection to the child being taken. However, on October 19th they filed the petition in the instant case, and the hearing was held on November 10, 1944.

There were witnesses called on both sides, some testifying that appellants were perfectly proper people to

take care of their child and that conditions in their two-room home were good, and others testifying to a great deal of disorder and to bad home conditions. It is perfectly apparent on the record that appellants were not, at the time of the hearing, in any situation to properly care for a child of the age of the little girl whose custody is now being considered. The father himself realized this and put in motion the proceedings which resulted in her commitment to the appellee. The Cockerhams had a small two-room house, were preparing to build an addition to it, and were expecting a second child which the Court is advised has arrived since the hearing. Both of them were working in defense plants. Perhaps to them this was necessary in view of their desire to expand their house to take care of their increasing family, but the mother never took care of the first child except for a few weeks after its birth. A home in which conditions were such that the husband felt that his child was not getting proper care, and on two occasions asked public authorities to do something about it, was not the place for the child to be. And there is testimony, which we have no reason to disbelieve, that there was a great deal of disorder in the house and furniture was thrown about at times in the late night and early morning hours. So long as parents act in a manner which results in each having the other arrested for disorderly conduct, there would seem to be no question that their home is no safe place for a baby. Without further detailing the testimony, it seems clear to us that the lower court was correct in remanding the child to the custody of the appellee.

In so deciding, however, we do not wish to be understood as approving the removal of children from the custody of their parents unless the reason is weighty and serious. The fact that parents are poor, that they are not able to give their children many of the comforts of life, is not in itself a reason for placing a child with strangers who are unable to give it the natural affection which parents can provide. But where it is apparent that

,a child is not being properly taken care of by its parents within their means, then the child is better off elsewhere.

In the case before us it was urged in the argument that the mother is now living at home, that she is taking care of the second child there, and that there seems to be no good reason for separating the two children. Whether the home is now being kept in such a way as to justify the return of the child is a matter which should be carefully investigated before such action is taken. If conditions there have changed, the appellants may be able in another proceeding to get an order restoring to them the custody of the child. That, however, is something that is not now before us. On the record as presented to us, the order appealed from was clearly correct.

This case was heard in this Court on May 16, 1945. On June 1, 1945, Chapter 797 of the Acts of Assembly of 1945 became effective. An appellate court is bound to decide a case according to existing laws, even though a judgment rightful when rendered by the court below should be reversed as a consequence. *Day v. Day,* 22 Md. 530. Chapter 797 establishes juvenile courts in a number of the counties of the State and Cecil County is one of these. Such juvenile courts are given original exclusive jurisdiction concerning any child who is neglected, and the term "neglected child" is defined in the Act. This definition may be broad enough to cover the case before us. The Act further states that nothing therein contained shall deprive other courts of the right to determine the custody of a child upon writs of *habeas corpus.* In these respects the Act is very similar to the Juvenile Court Act for Baltimore City passed by Chapter 818 of the Acts of 1943, and discussed in *De Angelis v. Kelley, supra.* We there held that the *habeas corpus* statute, Section 21 of Article 42, under which the instant case was heard below, was still in effect, notwithstanding the provisions of the Act of 1943. Chapter 797 of the Acts of 1945 has, however, another section, which repeals in so many words Section 21 of Article 42, and this repeal

is, undoubtedly, effective in Cecil County. The order appealed from in this case remands the child in question to the custody of the appellee "subject to the future order of the Circuit Court for Cecil County." Further action cannot be taken in a proceeding under Section 21 of Article 42, but there are provisions in Chapter 797 of the Acts of 1945 covering similar cases, and Section 85 of Article 16 of Flack's Annotated Code has not been repealed. The order of Judge Constable passed under the law existing when he decided the case will be affirmed but that part of it retaining jurisdiction will be reversed. We express no opinion as to the proper forum for future proceedings, if any are to be brought, because such an opinion would require a construction and interpretation of the provisions of Chapter 797 of the Acts of 1945. This was not before us at the time this case was argued, and it involves many questions of great importance which should only be determined after full argument and discussion. The only question arising out of its provisions which is involved in this case is its effect on Section 21 of Article 42, and we confine our examination of it to that point alone.

*Order affirmed in part and reversed in part with costs to appellee.*