YORKDALE CORPORATION *v.* POWELL

[No. 353, September Term, 1963.]

122

*Decided December 7, 1964.*

*Motion for rehearing filed January 5, 1965, denied January 7, 1965.*

The cause was argued on April 28, 1964 before HEN-

DERSON, PRESCOTT, HORNEY and SYBERT, JJ., and KEAT-
ING, J., Associate Judge of the Second Judicial Circuit, specially
assigned, and reargued on September 15, 1964 before HENDER-
SON, C. J., and HAMMOND, PRESCOTT, HORNEY, MARBURY,
SYBERT and OPPENHEIMER, JJ.

*William F. Mosner* (on both arguments) and *W. Lee Har-
rison* (on reargument), with whom were *Power & Mosner*
on the brief, for appellant.

*Ernest C. Trimble* (on both arguments) for appellee.

HAMMOND, J., delivered the majority opinion of the Court.
PRESCOTT, HORNEY and MARBURY, JJ., dissent. Dissenting opin-
ion by PRESCOTT, J., at page 134, *infra.*

Yorkdale Corporation, the appellant, which in 1960 acquired
some five acres of land on the east side of York Road about a
mile south of Towson (all but about an acre, which was zoned
for one or two-family residential use, was zoned for apartment
use), asked the Zoning Commissioner of Baltimore County in
1963 to reclassify the residentially zoned acre to apartment use,
to grant a special exception for an elevator apartment, to grant
a variance allowing an additional twenty-three feet in height for
the proposed building, and to grant a density variance permit-
ting the apartment house to embrace three hundred twenty-five
living units. Edwin E. Powell, the appellee, a nearby property
owner, protested. The zoning commissioner granted Yorkdale's
requests with the exception of the number of living units which
was cut to two hundred eighty-five. Powell appealed to the Board
of Zoning Appeals which denied the height increase, further
reduced the number of living units to two hundred fifty and
otherwise affirmed the commissioner. Powell appealed to the
circuit court where, by agreement, the case was heard and de-
cided on the question of whether the zoning ordinances of Balti-
more County gave the zoning officials power to grant a vari-
ance as to density.

The case was argued before Judge Berry on November 13,
1963, and on December 4 he held that Art. 3, Sec. 307 of the

zoning regulations of Baltimore County entitled "Variances" ("The Zoning Commissioner of Baltimore County and the Board of Zoning Appeals, upon appeal, shall have and are hereby given the power to grant variances from area and height regulations * * *" where strict compliance with the law would result in "practical difficulty or unreasonable hardship"), read with Art. 2, Sec. 217.7 of those regulations (which defines permissible densities), did not authorize a variance in density.

Yorkdale appealed to this Court and the case was argued on April 28, 1964. While a decision was under consideration, we were informed that the Baltimore County Council had on December 2, 1963, passed Bill 107, which was signed into law by the County Executive on December 5 and became effective January 20, 1964, to amend Art. 3, Sec. 307, so as to spell out that "no increase in residential density beyond that otherwise allowable by the Zoning Regulations [Sec. 217.7] shall be permitted as a result of any such grant of a variance from height or area regulations."

Feeling that the amendment might have made the main issue moot, we set the case down for reargument, Md. Rule 835 a 2, and the point was briefed and argued.

Maryland consistently has followed the rule that "an appellate court is bound to decide a case according to existing laws, even though a judgment rightful when rendered by the court below should be reversed as a consequence," as Judge Markell, for the Court, repeated in *Woman's Club v. State Tax Comm.*, 195 Md. 16, 19 (or, it may be noted, even when a judgment wrong when rendered is made right by the change in the law). See also for this proposition that a change in the law after a decision below and before final decision by the appellate Court will be applied by that Court unless vested or accrued substantive rights would be disturbed or unless the legislature shows a contrary intent, *Keller v. State,* 12 Md. 322; *Day v. Day,* 22 Md. 530; *Gordy v. Prince,* 175 Md. 688; *Cockerham v. Children's Society,* 185 Md. 97; and *Tudor Arms Apts. v. Shaffer,* 191 Md. 342.

The rule has been applied in zoning cases. In *Banner v. Home Sales Company D,* 201 Md. 425, a property owner on November 27, 1947, sought a change of proposed zoning of five acres

as "Cottage Residential" to a group housing classification, so that he could proceed with his housing projects on which he had spent a large amount of money. The Board of County Commissioners of Anne Arundel County granted the request on December 2, 1947, and classified the five acres as "Group Housing." On December 19, 1951, the owner applied for permits to build seventy-three group houses. On March 6, 1952, before construction of the houses had begun, protestants filed a petition for a change in the zoning of the five acres from "Group Housing" to "Cottage Residential." While the petition for a change was being considered, the owner began to build the foundations for the seventy-three group houses. Anne Arundel County had no provision for zoning appeals and the protestants filed a bill in equity, alleging that the change in 1947 to "Group Housing" was arbitrary, discriminatory and illegal, and praying a declaration that such zoning be declared invalid and void and that construction be enjoined until the zoning commissioner and the Board act on the petition for rezoning.

The chancellor held that the change to "Group Housing" zoning was valid, and the protestants appealed. At the argument before us, it was agreed that since the passage of the decree appealed from, the property had been rezoned by the Anne Arundel County officials back to "Cottage Residential." This Court said (p. 428) : "The case before us has therefore become *moot.* * * * The zoning contested in the case before this Court has been superseded by the zoning authorities."

There was a similar holding in *Lake Falls Assn. v. Bd. of Zon. Appeals,* 209 Md. 561. The circuit court, on September 15, 1955, affirmed the Board of Zoning Appeals in its action in rezoning a piece of ground from residential to "E" Commercial. The protestants appealed to this Court and, thereafter, on November 8, 1955, a new land use map for the area was adopted which zoned the property "Business Local." It was stipulated at the argument here that the uses permitted under "Business Local" are not the same as were permitted under "E" Commercial and that the commercial uses under the former are more restricted than they were under the latter. This Court said (p. 565) :

"In the *Banner* case the ultimate change in zoning of the property satisfied the purposes of the appellants, whereas, in the present case, it is assumed that the new Land Use Map does not satisfy the appellants. But, in both cases, the cause of action, i. e., the zoning classification that was the subject of litigation was extinguished by repeal."

In *Grau v. Board of Zoning Appeals*, 210 Md. 19, 23, the circuit court had affirmed the Board in the reclassification of two lots at the northwest corner of Loch Raven Boulevard and Mussula Road in Baltimore County from "B" (Semi-detached) Residential to "E" Commercial. The Board's action was on July 17, 1953, the circuit court's on June 24, 1955. The protestants appealed to this Court. On November 14, 1955, the County Commissioners adopted a new zoning map for the area and zoned the lots R 6 (residential one and two families) on the new map. This Court held the case moot "* * * because the reclassification ordered by the Board of Zoning Appeals * * * has been superseded by the County Commissioners."

It would seem to follow from the decisions in *Banner, Lake Falls* and *Grau* that an applicant for rezoning to a more intense use of his property, who has been successful before the zoning authorities and the circuit court does not acquire a vested or substantive right which may not be wiped out by legislation which takes effect during the pendency in this Court of the appeal from the actions below.

The decisions in these zoning cases are consistent with decisions in other areas of administrative law. See *Beechwood Coal Co. v. Lucas*, 215 Md. 248. There, the law in effect when the industrial accident happened made the findings of the Medical Board binding on the Commission if there was any evidence to support them. The Legislature deleted this provision effective June 1. This Court upheld the right of the Commission to review and disturb the findings of the Medical Board since the case was heard by the Commission after the change in the law. Chief Judge Brune, for the Court, said (p. 254) :

"* * * where the effect of the new statute is not to impair existing substantive rights but only to alter the

procedural machinery involved in the enforcement of those rights, such legislation is usually construed as operating on all proceedings instituted after its passage, whether the right accrued before or after that date."

Relied on was *Thomas v. Penna. R. Co.,* 162 Md. 509, where a new law which did away with witnesses and the *de novo* theory on appeals from the Compensation Commission's action and required the court review to be confined to the record before the Commission, was held to be applicable to an appeal entered before the amendment to the law. Also relied on were *State v. Jones,* 21 Md. 432 (statute shortening period of limitations upheld), and *Elliott v. Elliott,* 38 Md. 357 (new statute authorized court to restrict remarriage of offending party). Judge Brune, for the Court, said further in *Beechwood* (pp. 256-257):

> "Our views are reinforced by the special rule of statutory construction that rights which are of purely statutory origin and have no basis at common law are wiped out when the statutory provision creating them is repealed, regardless of the time of their accrual, unless the rights concerned are vested. * * * It is difficult to perceive how a 'right' to have the Medical Board's findings in an undetermined case conclusively presumed to be correct can be deemed a vested right * * *."

See also *Ireland v. Shipley,* 165 Md. 90; *Richardson v. Richardson,* 217 Md. 316; *Ziffrin v. United States,* 318 U. S. 73, 78, 87 L. Ed. 621 (Supreme Court held that since "a change in the law between a nisi prius and an appellate decision requires the appellate court to apply the changed law" a change in the law as to motor carrier permits which became effective after the application to and the hearing before the Commission but before its decision must be followed by the Commission) and *Burlington Truck Lines v. United States,* 371 U. S. 156, 9 L. Ed. 2d 207 (a change in the law applicable to an administrative application which became effective administrative law

four months after the Commission decided a case and before the District Court heard the appeal, required the reviewing court to remand for consideration in light of the change in the law). See also 82 C. J. S. *Statutes* Sec. 421, p. 996.

Yorkdale urges that even if the usual rule would otherwise govern and be applicable here to make Judge Berry's decision correct, whether it was or not when he rendered it, the always paramount consideration is the intention of the legislative body which changed the law and, if it did not intend the change to apply to pending proceedings, the court will not so apply it. Yorkdale finds evidence that the Baltimore County Council did not intend to make the density variance change apply to pending cases in the fact that the amendatory law, according to its terms, was to take effect "forty-five days after its enactment."

The minutes of the County Council show that at the council meeting on December 2, 1963, Bill No. 107 was called for final reading and vote. The chairman suggested an amendment that would make the bill an emergency measure. Mr. Rose, the zoning commissioner, spoke to the Council, advising the members that the zoning department favored the principle of the bill but opposed the bill as drawn, and suggesting a 180-day moratorium on the allowance of "high-rise apartment" zoning during which all those interested would prepare a new set of regulations pertaining to the field of apartment zoning. Mr. Dill, Director of Planning, then advised the Council that he strongly favored new high-rise zones and that he favored passage of Bill 107 as an interim measure. A motion to postpone action on the bill was made and, after discussion, withdrawn. The motion of the chairman to make Bill 107 an emergency measure failed, and the bill was passed to take effect forty-five days after its enactment.

Yorkdale's contention that the Council did not intend Bill 107 to apply to pending proceedings would seem to be based on these arguments: (a) the failure of the Council to make the bill effective as an emergency measure the day the County Executive signed it (when under Art. 3, Sec. 308 (g) of the Charter of Baltimore County it would become law)[1] and its action in pass-

---

1. "Upon the passage of any legislation * * * the same shall be

ing it as an ordinary law which would become effective forty-five days after the executive signed it, shows that the Council wanted the zoning authorities to continue to have power to grant density variance until the effective date of the new law; and (b) because the Council continued the status quo as to new applications during that period it meant the old law to continue to apply to and control applications which had been made before the effective date of the new law, even though such applications had not yet been finally acted on, either by the zoning authorities or the courts.

We cannot ascribe to the Council the intent Yorkdale argues for. Almost every bill passed by the Council takes effect forty-five days after its enactment just as almost every bill passed by the State Legislature takes effect on June 1 (under Art. III, Sec. 31, and Art. XVI, Sec. 2, of the Constitution of Maryland), even though it was passed by the Legislature and approved by the Governor months before. Art. 3, Sec. 308 (f) of the Charter of Baltimore County provides that:

> "All public local laws and ordinances enacted by the County Council shall take effect forty-five days after their enactment, unless by the affirmative vote of five members of the County Council any such law or ordinance shall be declared to be effective on a later date, or declared an emergency measure affecting the public health, safety or welfare, in which latter event the same shall take effect from the date of its enactment."

The Notes to the Baltimore County Home Rule Charter of Arthur W. Machen, Jr., Reporter to the Charter Board of Baltimore County, found in Baltimore County Charter, 1955, at p. 79, constitute, according to the Reporter, "* * * 'contemporaneous comment' in that they are derived from the official records of the Charter Board assembled during the period

---

presented * * * to the County Executive for his approval or disapproval and within ten days * * * he shall return any such legislation to the County Council with his approval endorsed thereon or with a statement in writing of his reasons for not approving the same. Upon approval by the County Executive any such legislation shall stand enacted."

when the Charter was being drafted" and were intended to serve three purposes: (a) to guide the voters who would adopt or reject the proposed Charter at the 1956 election; (b) to help the first County Council and officials; and (c) in appropriate instances to serve "the Bench and Bar in construing the Charter itself." The Notes remove any doubt, if the Charter provisions themselves left any, that the end of the forty-five day period was to be the equivalent of June 1 in the State legislative plan and that the Council was to have the same right as the State Legislature to postpone the effective date or, in any emergency "necessary for the immediate preservation of the public health or safety" (Constitution of Maryland, Art. XVI, Sec. 2) to make a law immediately effective, provided a specified number of legislators, greater than the number required to pass an ordinary bill (three-fifths of the State Legislature; five of seven of the Council) concurred in the belief of emergency.[2]

---

2. See p. 99 of the Reporter's Notes, Baltimore County Charter, 1955, where it is said:

"(f) *Effective Date of Laws; Emergency Measures.* Bearing in mind the possibility that the constitutional amendment proposed by the Acts of 1955, Chapter 557 may be in force when this Charter goes into effect (see Notes to Section 208 (a), *supra*), the Charter Board has not provided that laws and ordinances of the Council shall take effect on any particular calendar day, but rather that they shall take effect 45 days after their enactment. However, by a revision which was made in the tentative draft of this section, the County Council is given the power to declare a measure effective on a date beyond the 45-day period. The council also has the power to declare any measure 'an emergency measure' to take effect from the date of its enactment. In this latter respect, the privilege of declaring legislation 'emergency' so as to advance its effective date is the same procedure followed on the State level in Article XVI, Section 2 of the State Constitution."

(The change proposed by Ch. 557 of the laws of 1955 was approved at the 1956 election and amended Art. XI-A, Sec. 3, of the Constitution to provide as follows:

"* * * the charters of the various Counties shall specify the number of days, not to exceed forty-five, which may but need not be consecutive, that the County Council of the Counties may sit in each year for the purpose of enacting legislation for such Counties * * *.")

Attorney General Ritchie suggested in 1 Op. A. G. 286 that it would be wise for the State Legislature to add to every ordinary bill a section stating that this Act shall take effect June 1 and since this opinion the practice has been customary. *Thomas v. Police Commissioner,* 211 Md. 357, 361. The Baltimore County Council seemingly has followed the same practice, customarily adding to bills other than those not to take effect until later than forty-five days after enactment, or not emergency bills, the express direction that the ordinance shall take effect forty-five days after its enactment.

It would seem to follow that if the customary postponement of the effective date of a law, either under the State constitutional provisions or the Baltimore County Charter provisions meant, without more, a legislative intent that the usual rule that the law in effect when a case is finally decided controls, even though it has been changed since the decision below, was not to apply to pending proceedings, hardly ever, if ever, would the so-called usual rule be applied. This Court has not so interpreted the legislative intent. The Act of the General Assembly that changed the workmen's compensation law, dealt with in the *Beechwood* case, was approved by the Governor on March 24, 1955, although under Art. III, Sec. 31, of the State Constitution, like almost every other State law, it was not to and did not become effective until June 1. The *Beechwood* opinion found no significance in the fact that sixty-eight days had elapsed between the time the bill was enacted and when it became effective—during which the findings of the Medical Board would continue to be conclusive and not subject to review by the Compensation Commission if there was legal evidence to support them. Instead, this Court said (speaking through Chief Judge Brune at p. 256) :

> "In this case, as in the *Thomas* case, the repealing statute contains no saving clause respecting existing appeals. Judge Bond there said (162 Md. 513) : 'The words [of the amended statute] are comprehensive and admit of no exception. They constitute the only provision for appeal now in force, the former provision having been repealed in the enactment of this one,

without any saving clause respecting existing appeals; and the appellant can have only the existing law applied to govern her appeal.' "

In the *Thomas* case, *supra,* the amending act was approved by the Governor on April 17, 1931, and the new law became effective June 1, 1931—forty-five days later. The Court in the *Thomas* case found no more significance in this than did we in *Beechwood*. Indeed, Chief Judge Bond there said (p. 512) :

"The appellant denies the propriety of construing the act to have a retrospective operation, so that it should apply to prevent the production of the witnesses again on an appeal which had been taken before the passage of the act and the date of its effectiveness. And the argument is based on the principles that the Legislature must, if the language and operation of the statute permit it, be presumed to have intended not to cut off rights already attached, by removing grounds of pending appeals, or changing the existing procedure to the disadvantage of litigants, and in workmen's compensation cases not to depart from the liberal attitude required to accomplish the purposes of the Workmen's Compensation Act. * * * But we see no escape from construing the restriction to apply to the previous appeals."

No added significance sought by Yorkdale can with certainty or accuracy be attached to the fact that the County Council did not adopt the amendment to make Bill 107 an emergency measure. To do this in any case the Council, like the State Legislature, must find by a substantial majority that the public health or safety will be adversely affected unless legislation is made immediately effective. Failure to pass a bill as an emergency measure ordinarily would mean no more than that not enough members thought the public interest required immediate emergency aid, not that the legislative body intended to do away with the usual rules as to the application and effect of new or changed laws. This proposition would not be altered because a motion to make a bill an emergency measure failed before the

vote which passed the bill took place. Both the State Legislature, under the Constitution, and the Council, under the Charter, can pass almost any bill as an emergency measure and because they do not do so, in any given instance, whether they in terms vote against so doing or merely fail to act at all on the proposition, should not be accorded significance as an indication that they intended the bill they pass as an ordinary measure should not be subject to the usual rules.

In the case before us, the Council may well have thought that no difference in result would follow, as far as the application of the law to pending cases was concerned, whether the law was an emergency or an ordinary measure. The attitude of the zoning commissioner, as revealed to the Council, was that he wanted a moratorium on density variances and special exceptions for apartments for 180 days, and the Council might have anticipated that no new variances would be granted during the forty-five days from enactment to effective date. There was a real and serious question whether Sec. 307 of the County zoning regulations which was amended by Bill 107 did not, as it existed, already mean what the amendment made by Bill 107 said it was to mean. The protestants in the case then before Judge Berry had so contended and argued on November 13 and the decision was under consideration when the Council passed Bill 107 and sent it to the Executive. The bill was not enacted and did not become a law until December 5, 1963, when the County Executive signed it. Judge Berry's decision holding that the old law meant what the new law provided for was filed December 4, 1963, so that when Bill 107 became law, the only judicial decision extant was that no density variances could be granted, either in the case before us or to any one else. On this state of the facts, even on Yorkdale's theory no difference in result would follow whether the bill was an emergency measure or an ordinary bill.

We can find no sufficient evidence of legislative intent that Bill 107 was not to be subject to the usual rules, and hold therefore that since the amended law came into effect while the case was pending before us, the case is moot. The appeal will be dismissed.

*Appeal dismissed, with costs.*

PRESCOTT, J., filed the following dissenting opinion, in which HORNEY and MARBURY, JJ., concurred.

I find myself in complete accord with the majority as to the law which controls the decision herein (although not in full agreement as to the manner in which all of the law mentioned therein is expressed); but, it frequently occurs that the proper application thereof is as difficult as determining the applicable law.

It must be borne in mind that the single question involved is the granting of a density variance, and the case turns *entirely* upon presumptions and rules of statutory construction; and our attention should not be drawn away from this fact by the first part of the majority opinion, where four or five cases are cited with little, if any, emphasis on the questions of presumptions, or of legislative intent. (It is the writer's belief that the County Council of Baltimore County evinced a clear and unmistakable intention that Bill 107 should not apply to pending litigation, and that intention will be shown by the minutes of the council's meeting after a statement of the Maryland law.) In a similar situation as ours, it was stated by Chief Justice Maltbie in *Demarest et al. v. Zoning Comm.*, 59 A. 2d 293 (Conn.), "the matter becomes one of *presumed intent* [of the legislative body]." (Emphasis added.) And Chief Judge Lehman, for the New York Court of Appeals, in *Shielcrawt v. Moffett*, 61 N. E. 2d 435, said: "General principles may serve as guides in the search for the intention of the Legislature in a particular case but only where better guides are not available. We have said that they 'govern *in default* of the disclosure by the Legislature of a different intent. * * *. In the end, it is in consideration of good sense and justice that the solution must be found.'" (Italics added.) These statements seem to be in full accord with the Maryland law, which will now be set forth; and it will be noted that nearly all of the Maryland cases cited by the majority are included therein. It will also be noted that in none of the cases cited by the majority was the question of legislative intent raised by extrinsic evidence; they were all decided on general presumptions and rules of statutory construction. Bill No. 107 did not change the classifica-

tion of zoning of any property, nor did it eliminate any classification of zoning; it was an "ordinance" to amend former Section 307, so that *after* the effective date of the amendment (forty-five days after December 5, 1963) "no increase in residential density beyond that otherwise allowable by the Zoning Regulations shall be permitted as a result of any such grant of a variance from height or area regulations."

This Court, in *Higgins v. City of Balto.,* 206 Md. 89, held that zoning ordinances are usually prospective in nature. And this seems peculiarly appropriate when the ordinance is promulgated by a legislative body such as the Council in a charter county. There can be little doubt that laws, generally, are enacted to regulate future conduct; in other words, they, ordinarily, are prospective in nature. And "a statute will not be given a retrospective operation, unless its words are so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them, or unless *the manifest intention of the Legislature could not otherwise be gratified"* (emphasis added). *Tax Comm. v. Power Company,* 182 Md. 111, 117. See also *Taggart v. Mills,* 180 Md. 302; *Anne Arundel County v. Snyder,* 186 Md. 342. And an amendatory Act such as that here involved takes effect, like other legislative enactments, only from its effective date, unless an intent to the contrary is expressed in the Act, or *may be clearly implied from its provisions. Tax Comm. v. Power Company, supra.*

To this well-established rule of statutory construction must be added the qualification that statutes which merely affect a remedy or law of procedure, ordinarily, apply to actions begun after their passage, whether the right of action accrued before or after the change in the law. *Ireland v. Shipley,* 165 Md. 90; *Kelch v. Keehn,* 183 Md. 140; *Beechwood Coal Co. v. Lucas,* 215 Md. 248; *Richardson v. Richardson,* 217 Md. 316; *Demarest et al. v. Zoning Commission etc. et al., supra;* 50 Am. Jur., *Statutes* § 482; 82 C.J.S. *Statutes* § 416. In *Richardson, supra,* Chief Judge Brune, for the Court, stated the rule as follows: "Ordinarily a change affecting procedure only, and not substantive rights, made by statute * * * applies to all actions whether accrued, pending or future, *unless a contrary inten-*

*tion is expressed"* (italics added). And, as a general proposition, the law at the time of this Court's decision is to be applied, even though it requires a reversal of the lower court's judgment, which was proper under the law existing when it was entered. *Gordy v. Prince,* 175 Md. 688; *Cockerham v. Children's Society,* 185 Md. 97; *Tudor Arms Apts. v. Shaffer,* 191 Md. 342; *Woman's Club v. State Tax Comm.,* 195 Md. 16.

But, if there be one rule of statutory construction, which the court decisions recognize and upon which the authorities agree, it is that the *intention* of the Legislature should be effectuated. *McKeon v. State,* 211 Md. 437; *Casey Development Corp. v. Mont. County,* 212 Md. 138; *Tax Comm. v. Power Company, supra; Balto. Transit Co. v. MTA,* 232 Md. 509; 82 C.J.S., *Statutes* § 414; 50 Am. Jur., *Statutes,* § 223; and see the long line of Maryland cases to like effect, too numerous to cite, collected in the Maryland Digest, *Statutes,* key number 181 (1). This rule has been termed the "primary," "fundamental," "paramount," and "cardinal," rule of statutory construction (compare *Height v. State,* 225 Md. 251, where most of these adjectives are used). All other rules of statutory construction are *subordinate* thereto, 82 C.J.S., *Statutes,* § 321, and "all other rules serve but as guides *to assist in determining such intent* with greater certainty." (Italics added.) *Van Antwerp v. State,* 55 N. W. 2d 108 (Mich.); *Romanchuk v. Plotkin,* 9 N. W. 2d 421 (Minn.). And this rule applies to all statutes, whether they relate merely to remedies, procedure to enforce remedies, or otherwise; and it also applies to the effect that a statute has upon pending actions and proceedings. 82 C.J.S., *Statutes,* § 416, *Pending actions and proceedings.*

I will not attempt to determine whether the ordinance here involved is purely "remedial" in nature, as the majority make no specific ruling thereon, and I think the legislative body which enacted the same manifested a clear intention as to whether it should be applied prospectively or retrospectively, and as to whether it should affect pending cases. There can be no doubt that a legislative body, when no constitutional proscriptions are violated, may exclude legislation from affecting pending cases.

See, for example, § 3, Chapter 94, Acts of 1957 (The Administrative Procedure Act), wherein it is provided that certain repeals "shall not affect pending proceedings." See also Article 66½, Section 1.

The majority opinion makes no claim that the legislative intent as to whether or not Bill 107 should affect pending proceedings is ascertained or arrived at by any language in the Bill itself, but turns the case *entirely* upon general presumptions and general rules of statutory construction. This is an important phase of the case.

There can be little doubt that, under proper circumstances, the Courts may resort to the legislative history of a statute when seeking to learn the legislative intent which motivated its enactment. *Balto. Transit Co. v. MTA, supra; Pressman v. Barnes,* 209 Md. 544; *Nelson v. Westland Oil Co.,* 96 F. Supp. 656 (D.C., N.D.) 2 *Sutherland Statutory Construction* (3rd ed.), § 4505. The learned author, in the work last cited, states the rule thus:

> "Before the true meaning of the statute may be determined consideration must be given to the problem in society to which the legislature addressed itself, prior legislative consideration of the problem, the legislative history of the statute under litigation, and to the operation and administration of the statute prior to litigation."

Under the Baltimore County Charter, a Bill enacted by the County Council may take effect as an emergency measure from the date of its passage, forty-five days after its enactment where no effective date is named in the Bill, or from a specific date named therein later than forty-five days. In the absence of constitutional or statutory proscriptions, the latter is permissible. Cf. *Thomas v. Police Commissioner,* 211 Md. 357; 82 C.J.S., *Statutes,* § 400.

At a meeting of the Council on December 2, 1963, Bill No. 106 was called for final reading and vote. It was passed as an emergency measure, to take effect from that date, which shows that the Council was keenly alert as to the difference between

emergency and ordinary Bills. Immediately thereafter, Bill No. 107 was likewise called for final reading and vote. The preamble states that Sections 23-20 and 23-21, which require at least one public hearing by the Director of Planning and at least one such hearing by the Council before adopting a zoning regulation, were complied with; so the Bill was being considered only after previous deliberation thereon. This Bill, as drawn, called for an effective date of forty-five days after its enactment. Whereupon, as shown by the minutes of the meeting, the following occurred:

"BILL NO. 107 was called and the Chairman stated that he had an amendment that would make this bill an emergency measure. Mr. John G. Rose, Zoning Commissioner, then appeared before the Council and explained the reasons of the Zoning Department for favoring a bill such as Bill No. 107 but opposing Bill No. 107 as such and he suggested a 180 day period during which no 'high-rise apartment' zoning would be granted and all of the persons involved would prepare a new set of regulations pertaining to the field of apartment zoning. Mr. Rose answered questions of members of the Council pertaining to the bill and also to the proposed 180 day moratorium.

"Mr. Malcolm Dill, Director of Planning, appeared before the Council and stated that he, too, strongly favored a new 'high-rise zone.' He stated, also, that he favored passage of Bill No. 107 as an interim measure at this time. Mr. Schield then stated that in light of the various views expressed both by Mr. Dill and Mr. Rose, he would offer a motion to postpone action on this bill pending further study. Mr. Schield withdrew this motion at the request of Mr. Anderson. There then followed more discussion among members of the Council. The Chairman then called on Mr. Raymond Carey, representing the Chatterleigh Association, who spoke in favor of the passage of Bill No. 107 stating the fears of many residents because of an extremely rapid growth of high-rise apartments. The

Chairman then called on Mr. Andrew Bristow, at the request of Councilman Anderson, who also stated reasons in favor of the passage of Bill No. 107 at this time. Mr. Bristow stated further that as a member of the Zoning Revision Committee, he felt an adequate bill could be presented in 180 days establishing proper high-rise and other type apartment zones. The Chairman then stated that he favored passage of the bill as an emergency measure, and he made the following motion to amend. * * *."

There followed a motion to amend the Bill so as to make it an emergency ordinance. The Council refused to enact the Bill as an emergency measure, the motion for amendment being defeated. The Bill was then enacted as originally presented to "take effect forty-five days after its enactment." In other words, the Council explicitly wanted the zoning authorities to have the power to grant "residential density" variances under Section 307 (a power they had exercised for years) for a period of forty-five days after December 5, 1963. Thereafter, this power should cease, and the question of the future granting of such variances should depend upon subsequent ordinances. This was a clear manifestation that the legislative body enacting Bill 107 did not intend it to have a retrospective effect, or that it was to affect pending litigation under Section 307 challenging the authority of the zoning officials to grant variances thereunder. A holding to the contrary, in effect, renders Bill 107 an emergency measure taking effect from the date of its passage (which the Council flatly refused to do), for, if the Bill affects pending appeals, in the ordinary course of events, an appeal to the trial court from the granting of any variance within forty-five days after December 5, 1963, would not likely be heard, and a subsequent appeal to this Court certainly would not be heard, until after the effective date of Bill 107.

As I read the minutes, there was no thought by the Council that, in the passage of Bill 107, it was permanently doing away with density variances involving high-rise apartments, but, by its passage, after forty-five days, there would be a moratorium thereon until a new comprehensive ordinance relative thereto

should be formulated and enacted. The holding of the majority produces this unusual, if indeed not incongruous, result. It cannot be doubted (and it is not questioned) that the zoning authorities had the power to grant variances such as that involved for a period of forty-five days after December 5, 1963; therefore if a half a dozen such variances were granted after December 5th, but before the expiration of forty-five days and no appeal were taken from their granting, they would be good and valid variances, while that of appellant would be voided (even though granted prior to the later variances) simply because an appeal had been noted. I am unable to attribute to the Council an *intention* to accomplish such an unfortunate result.

On the contrary, when the Council flatly refused to pass the Bill as an emergency measure, which, if passed as such, would have taken away the power of the zoning officials to grant variances for high-rise apartments from the date of its enactment and left little doubt that (upon applying the general presumptions and rules of statutory construction) the Bill was intended to affect pending litigation, the Council deliberately did not intend it to take effect as an emergency measure nor intend it to affect pending cases. In the *Nelson* case, *supra,* there was deleted from a statute, during the course of its enactment, a provision that would have made it retroactive. The plaintiff argued that the deletion was made because it was merely surplusage, but Judge Vogel stated: "By deleting that part which would have given it a retroactive effect, the Legislature was saying that it should *not* have such effect. It seems to me that conclusion is inescapable." To me, it is likewise inescapable that when the Council refused to enact Bill 107 as an emergency measure, it was saying that the Bill should not be an emergency measure, in fact or in effect.

In Black, *Interpretation of Laws* (2nd Ed.), p. 389, the learned author states the rule thus:

> "It is said that, in the absence of any express declaration in the act, the question whether it is meant to be prospective or retrospective is one of construction upon the statute, considered per se and in connection with the subject-matter. And the occasion of the en-

acting of the law may be looked to, to assist in determining its character as retroactive or prospective. *It has also been laid down that when the legislature fixes a future day for the statute to go into effect, it thereby plainly shows that it is intended to be prospective only."* (Italics added.)

See also *McGovern v. Connell,* 43 N. J. Law 106; *Dewart v. Purdy,* 29 Pa. 113; *Jackman v. Inhabitants of Garland,* 64 Me. 133; *Reis v. Graff,* 51 Cal. 86. Cf. *Lydecker v. Babcock,* 26 Atl. 925 (N. J.).

The same author, *op. cit.,* pp. 584 and 585, states:

"An amendatory statute, like other legislative acts, takes effect only from its passage, and will not be construed as retroactive or as applying to prior facts or transactions, *or to pending proceedings,* unless a contrary intention is expressly stated or necessarily implied. * * * And where an amendatory act contains a provision that it shall not take effect until a future date, the old law remains in full force until the amendment goes into operation." (Italics added.)

This Court, through Chief Judge McSherry, in *Roland Park Co. v. State,* 80 Md. 453, stated: "The result which may follow from one construction, or another, of a statute, is always a potent factor, and is sometimes, in and of itself, conclusive as to the correct solution of its meaning." See also *Phillips v. Balto. City,* 110 Md. 431; *Tyrie v. Balto. Cty.,* 215 Md. 135; *Height v. State, supra.* It seems that the unfortunate results pointed out above should weigh heavily towards a conclusion that the Council did not intend Bill 107 to affect pending cases, especially since that intention is derived from no language in the Bill itself, but entirely from general presumptions and rules of construction.

I think the case is not moot, and it should be decided in accordance with the law as it was when the variance was granted (which was as it had been interpreted by the county officials for years).

Although not basing this dissent upon what follows, it seems

appropriate to make one or two observations relative to the majority opinion. It states, "Maryland consistently has followed the rule that an appellate court is bound to decide a case according to existing laws." There can be little doubt that this is the general rule, as pointed out above herein, but the quotation is so broad that it is hard to square with such cases as *Appeal Tax Court v. W. M. R. R. Co.*, 50 Md. 274. There, petitions of the appellees under an 1876 law were pending in the court below when the Act of 1878, Ch. 413, became a law. This latter Act repealed the 1876 law. On appeal, it was held that the Act of 1878 was not retrospective, and what had been done under the previous law, although it had been repealed at the time of the hearing of the appeal, was not rendered ineffectual or nugatory. Shepard shows that this case has been followed many times.

Again, in *Big Savage Ref. Corp. v. Geary*, 209 Md. 362, the trial judge was reversed for applying existing law at the time he heard the case. This Court stated: "The learned trial judge * * * decided that Chapter 82, of the Acts of 1955, *supra,* effective June 1, 1955, governed the action of the Commission [Workmen's Compensation Commission] in this case. However, the review of the court is limited to a review of the evidence before the Commission based *upon the law in effect at that time.* * * *. It [Chapter 82] in no way governed the review by the Commission on May 3, 1955, when it passed its order because it was *not in effect* at that time [italics added]." [1] And this was the holding even though Chapter 82 related purely to "procedural" matters (See *Beechwood Coal Co. v. Lucas,* 215 Md. 248, where the language quoted from *Big Savage* was repeated. It is cited in the majority opinion with no mention made of this aspect of the case), which, ordinarily, would call for a retrospective application thereof and its application to pending appeals. See the authorities cited above to that effect and those cited in the majority opinion.

Two further observations will be made before concluding.

---

1. This case and the language quoted were cited by the appellant. It seems that the majority opinion should answer the quotation, but no mention is made thereof.

The majority opinion cites the *Banner, Lake Falls* and *Grau* cases, wherein it was held that the issues involved had become moot. In each of those cases, the zoning authorities had *changed* the *zoning classification* or *done away* with the *classification* altogether. The Court, in *Lake Falls,* succinctly states the reason for its rulings: "The cause of action, i. e., the zoning classification that was the subject of litigation was extinguished by repeal." In the instant case, there was no reclassification of the property or extinguishment of its former classification, but Bill No. 107 merely took away the power of the zoning officials, after a day certain, to grant density variances. In the *Thomas* case, 162 Md. 509, cited by the majority, the Legislature, during the pendency of litigation, *repealed entirely* the former method of appeal in Workmen's Compensation cases and adopted a new one. On the grounds that the new law was *purely* procedural in nature and, if it did not apply, *no* appeal whatsoever would be available, it was held that the new law was retrospective in effect. It has little, if any, analogy to the case at bar.