978 A.2d 645

**Robert SCRIMGEOUR**

v.

**FOX HARBOR, LLC.**

**No. 150, Sept. Term, 2008.**

Court of Appeals of Maryland.

Aug. 25, 2009.

Christopher F. Drummond, Centreville, for Appellant.

Richard A. DeTar (Demetrios G. Caouris, Miles & Stockbridge, P.C., Easton), on brief, for Appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BATTAGLIA, J.

This case involves a zoning dispute between Appellant, Robert Scrimgeour, an adjoining landowner to a 166–acre property in Talbot County ("Property") presently owned by Fox Harbor, LLC,[1] Appellee, and concerns a zoning officer's issuance of a certificate to build a structure with 42,835 square feet of floor area on the Property.[2] The structure was intended to house equine activities. Mr. Scrimgeour challenged the issuance of this permit before the Talbot County Board of Appeals, arguing primarily that the size of the structure was too large to be "accessory to" a residential or agricultural use of the property. After a three-day hearing in March and April of 2007, the Talbot County Board of Appeals upheld the issuance of the building permit, as either a permissible accessory residential or accessory agricultural structure under the then existing local zoning ordinance. Mr. Scrimgeour sought judicial review in the Circuit Court for Talbot County, which affirmed the Talbot County Board of Appeals' decision. Mr. Scrimgeour then noted an appeal to the Court of Special Appeals, and we granted certiorari prior to any proceedings before the intermediate appellate court to consider the following question:

Did the trial court err as a matter of law by affirming the Talbot County Board of Appeals' decision that the structure proposed by the Appellee is properly characterized as either

1. Mr. Scrimgeour initially filed his zoning action against Stacey Smith who owned the property at issue in this case with her husband Harry Smith as tenants by the entireties. After the Smiths divorced, Mrs. Smith deeded the property to Mr. Smith, and he was then substituted as the Appellee in this action. Subsequently, Mr. Smith transferred his interest to Fox Harbor, LLC, whose principal owners are Jeffrey Spence and Darlene Spence, and Fox Harbor was then substituted in this proceeding.

2. The parties differ as to how they reference the structure at issue in this case. Mr. Scrimgeour refers to the building as a "structure." Fox Harbor has referred to the building in numerous ways including "horse barn," "horse stable," "agricultural building," "riding arena," "farm building," and "stable." For purposes of this opinion, we shall refer to the building as the "structure."

an Accessory Residential or Accessory Agricultural use or structure pursuant to the Talbot County Zoning Code? *Scrimgeour v. Smith,* 406 Md. 744, 962 A.2d 371 (2008).

After certiorari was granted, but before oral argument, the Talbot County Council adopted Bill 1162, which among other things, repealed the County's Zoning Code in its entirety and enacted new land use provisions entitled "Zoning, Subdivision and Land Development," which became effective on June 13, 2009, five days after oral argument. At oral argument, counsel for both parties alerted the Court to the impending, material changes in the code, including new zoning districts,[3] updated definitions of "accessory structure,"[4] "accessory use,"[5] and "stable,"[6] and an updated Table of Uses, specifical-

---

**3.** Previously, Fox Harbor's land was zoned Rural Agricultural Conservation and Agricultural Conservation. Under the new code, Fox Harbor's property is zoned Western Rural Conservation and Rural Conservation.

**4.** "Accessory Structure" was previously defined in Section 190–14 of the Zoning Article, Talbot County Code as:

A structure detached from a principal building on the same lot and customarily incidental and subordinate to the principal building or use.

"Accessory Structure" is now defined in Section 190–208 of the Zoning, Subdivision and Land Development Article, Talbot County Code as:

A structure detached from a principal building on the same lot and incidental and subordinate to the principal building or use.

**5.** "Accessory Use" was previously defined in Section 190–14 of the Zoning Article, Talbot County Code as:

A use of land or of a building or portion thereof customarily incidental and subordinate to the principal use of the land or building and located on the same lot with such principal use.

"Accessory Use" is now defined in Section 190–208 of the Zoning, Subdivision and Land Development Article, Talbot County Code as:

A use of land, or of a building or portion thereof, which is incidental to, subordinate to, and customarily found in connection with the principal use of the land or building and which is located on the same lot with such principal use.

**6.** "Stable" was previously defined in Section 190–14 of the Zoning Article, Talbot County Code as:

A structure that is used for the shelter or care of horses.

"Stable" is now defined in Section 190–208 of the Zoning, Subdivision and Land Development Article, Talbot County Code as:

ly related to "Agricultural Uses and Structures, Accessory."[7]
We asked the parties to submit supplemental briefs concerning the applicability of the code changes with regard to the question before us.

Because *Layton v. Howard County Board of Appeals*, 399 Md. 36, 922 A.2d 576 (2007) applies here regarding the retrospective effect of substantive changes in relevant statutory law that take place during the course of litigation in a land use or zoning matter (a holding apparently not disputed by the parties), we elect not to address the substantive question raised in this case and instead will remand this case to Talbot County for the administrative body's consideration and determination of the effect of the new code on the dispute.

The pertinent history concerning the building permit and Board of Appeals' findings and conclusions are set forth in the written opinion in this matter of Circuit Court for Talbot County Judge Sidney S. Campen, Jr., issued on June 5, 2008, as follows:

> By way of background, on November 3, 2005, the property owners, Mr. and Mrs. Smith, filed an application for a building permit to construct a "Riding Arena (Phase I)" with a footprint of 20,000 square feet on their waterfront property consisting of 165.857 acres at 5289 Ferry Neck Road, Royal Oak (the subject "property"). The application was assigned Permit No. 05–918. It was approved in the normal course and a building permit was issued by the County Office of Permits and Inspections on November 10, 2005. On September 29, 2006, Mrs. Smith filed another application for a building permit for "Completion of Horse Stable" with a *new* footprint of 42,835 square feet. The

---

A structure covered by the "Right to Farm" legislation and used for the shelter or care of horses or similar animals. A stable may include an indoor riding area or other amenities directly associated with the care of horses or similar animals.

7. The new zoning code now includes "stables" under the heading Agricultural Uses and Structures, Accessory. Stables are allowed accessory uses in the Western Rural Conservation and Rural Conservation districts.

application was assigned Permit No. 06–852, and was approved and issued by the County on November 17, 2006. That permit is the subject of this appeal.

Pending the issuance of Permit No. 06–852, however, the Planning Officer for Talbot County, George Kinney, sensing opposition and potential litigation from the surrounding neighbors, decided to take the matter before the Talbot County Planning Commission for "thoughts and feedback" on whether the proposed structure would be agricultural. Following two public hearings, the Planning Commission concluded that the equestrian facility proposed by Mr. and Mrs. Smith would "fit under" the accessory use to an agricultural operation or a residential accessory structure, and recommended approval of the building permit.

The Permit (06–852) issued by the Planning Officer for completion of the horse stable contained conditions, *inter alia,* expressly prohibiting use for commercial purposes with a stipulation that it must be a "private use facility only."

A timely administrative appeal to the Board of Appeals was noted by the Petitioner, Robert Scrimgeour, on December 12, 2006, citing six allegations of error on the part of the Planning Officer in the approval of Zoning Certificate No. 06–852. The matter was designated as Appeal No. 1451 and scheduled for hearings commencing March 12, 2007. Pre–Hearing Statements with exhibits were submitted on behalf of the Petitioner, Mr. Scrimgeour, Talbot County and Mr. and Mrs. Smith. Following the second hearing on March 19, 2007, at which time testimony was concluded, counsel submitted closing arguments in writing in the form of Post Hearing and Closing Memoranda. On April 16, 2007, the Board reconvened to deliberate and concluded that the Petitioner had failed to "carry his burden of proof" and unanimously denied the Appeal.

On May 7, 2007, the Board issued its written Decision denying the Petitioner's appeal thereby affirming the decision of the Planning Officer in the issuance of Permit No. 06–852. On May 30, 2007, the Petitioner timely filed the subject Petition for Judicial Review of the Decision.

(emphasis in original) (footnotes and internal citations omitted).

The Board of Appeals made the following findings of fact and conclusions of law when it was confronted by the dispute:

While opinions and conclusions varied, there were few, if any, disputes concerning the material facts that were presented to the Board through witnesses or documents. Our findings of fact based on the evidence presented to us are as follows. The Subject Property consists of approximately 165.8 acres. The Property is zoned a combination of Rural Agricultural Conservation district-RAC (non-critical area only) and Rural Conservation district-RC (critical area only). It is one of the larger agriculturally zoned parcels of land in Talbot County. The predominant use of the Property is agricultural. A majority of the Property has been actively crop farmed for many years. Although some acreage may have been left fallow in the past year, this is consistent with agricultural practices and does not persuade us that the Property's predominant use is no longer agricultural. The Property is also assessed as in agricultural use. Mrs. Smith maintains her primary residence on the Property.

With regard to the project proposed by Ms. Smith, while she may have contemplated a different use at an earlier point in time, her intention is to use the structure as a facility for caring for "rescue" horses. Essentially, Mrs. Smith wants to operate a foster care home for unwanted horses. Although the facility will not be commercial in the sense that Mrs. Smith will not be conducting this activity for financial gain, operation of the facility will be a full time, non-paying responsibility for her.

The size of the proposed facility is approximately 42,835 square feet. The vast majority of the facility will be devoted to stalls to accommodate twenty eight (28) horses and an indoor riding and exercise area. We note that the Appellant expressed concern that there may be a second floor viewing area of approximately 1300 square feet. We do not believe that inclusion of a viewing area that encom-

passes approximately three percent (3%) of the facility transforms the structure into a building primarily intended for spectator viewing. The Applicant also expressed concern that one iteration of the Owner's plans submitted to the Planning Office included sixty (60) parking spaces. We accept Mrs. Smith's testimony that she will include approximately twenty (20) parking spaces which seems an appropriate number for the non-commercial activities she intends for the structure.

We conclude that the Project constitutes a permissible agricultural use pursuant to the Talbot County Zoning Ordinance (the "Zoning Ordinance"). Section 190–14 of the Talbot County Code defines "agriculture," in pertinent part, as follows: "All methods of . . . management of livestock. . . . This includes . . . the activities of feeding, housing, and maintaining of animals such as . . . horses. . . ." Pursuant to Section 190–19.B. of the Zoning Ordinance, the General Table of Land Use Regulations is illustrative, not all inclusive. As directed by this section of the Zoning Ordinance, like the Planning Director, we interpret the uses listed under **Accessory Agricultural Uses and Structures,** page 190: A11 of the Zoning Ordinance, liberally to include the project proposed by Mrs. Smith. We also note that the Planning Officer, after obtaining a recommendation from the Planning Commission, specifically determined that the use proposed by Mrs. Smith would have similar impacts to the uses listed under **Accessory Agricultural Uses and Structures.** *See* Section 190–19.C. of the Zoning Ordinance. Stated more simply, "agriculture" includes feeding, housing and maintaining horses. Based upon the evidence we conclude that the primary purpose for the Project proposed by Mrs. Smith is precisely that, to feed, house and care for horses which include training and exercise for the horses. In the event that Mrs. Smith is successful and her care for the horses progresses beyond mere feeding and exercise to successful hunter-jumper dressage or other skilled horsing activities, and/or if girl scouts or other groups of children are sufficiently interested that sporadic private group visits

are arranged, this facility will nevertheless constitute an agricultural structure.

Like the Planning Commission, whose recommendation was incorporated into the Planning Officer's reasoning, we also conclude that the Project is also permitted under the Zoning Ordinance as an accessory residential use in the RAC/RC zones. Specifically, "horse stables" are expressly permitted in the RAC and RC zones. We are mindful of the Appellant's argument that the size of the proposed structure is too large to be "accessory" to the residential use of the Property. The Zoning Ordinance does not contain a size restriction on accessory buildings with the exception of certain impervious surface limitations. There is no dispute that the Owner's proposed structure satisfies the impervious surface limitations. The General Table of Land Use Regulations does, however, contain an express size or scale restriction in that it allows "horse stables" in the RAC and RC zones provided that the property owner has a "minimum lot size of 2 acres per 1 horse and 1 additional acre for each additional horse." Page 190: A13 of the Zoning Ordinance. In the instant case, the Owner has an unusually large parcel consisting of over 165 acres. The Owner's Property is more than adequate in size to accommodate the structure proposed for 28 horses.

Regardless of the label placed on the proposed structure, a building intended to house, feed, and care for horses is an agricultural structure. Agricultural structures are necessarily large. They typically accommodate large farm animals, large farm equipment or large quantities of farming products. The Zoning Ordinance specifically allows a horse stable of sufficient size to accommodate 28 horses on approximately 166 acres as an accessory use to a residence in the RAC/RC zones. We decline to liberally interpret the implied meaning of accessory to supersede the specific size and scale restrictions contained in the General Table of Land Use Regulations for a horse stable which is plainly

based upon accommodating a specified number of horses based on acreage.

(emphasis in original).

In his original brief and before us in oral argument, Mr. Scrimgeour contended that the structure was not "incidental and subordinate" to the existing residential structures on Fox Harbor's property and that the size and use of the structure did not qualify it as an accessory agriculture use or accessory residential structure under what is now the former zoning ordinance. Conversely, Fox Harbor argued that the structure was a stable and qualified as an allowable accessory agricultural use, accessory residential use, and an allowable accessory structure to the agriculture use of the Property. Fox Harbor also argued that the stable's size complied with either an accessory agricultural use or accessory residential use under the former ordinance.

During oral argument before us, the parties brought to our attention that between the time certiorari was granted and oral argument, the Talbot County Zoning Code had been amended to include new zoning districts, revised definitions of "accessory structure," "accessory use," and "stable," and a revised Table of Uses, specifically, the contents under the heading "Agricultural Uses and Structures, Accessory." The amended code was to become effective on June 13, 2009, five days after oral argument. In the supplemental briefs, both parties appear to concede that *Layton*, 399 Md. at 36, 922 A.2d at 576, applies to this dispute, but then debate whether the new code and the new definitions support their respective cause. Mr. Scrimgeour contends that under the new code, Fox Harbor's structure is no longer a "stable." He then argues that even if the structure were considered a stable, the revised definitions of "accessory structure" and "accessory use" do not support Fox Harbor's contention that the structure is "accessory to" the "principal building or use" on Fox Harbor's property. Fox Harbor maintains that the revised code offers more support for its position as the definition of "stable" now includes "indoor riding arena," and a stable is

now expressly allowed as an accessory agricultural use and structure in Fox Harbor's zoning district.

In *Layton*, we reaffirmed the principal conclusion of *Yorkdale Corporation v. Powell*, 237 Md. 121, 205 A.2d 269 (1964), that "legislated change of pertinent law, which occurs during the ongoing litigation of a land use or zoning case, generally, shall be retrospectively applied." *Layton*, 399 Md. at 38, 922 A.2d at 577. Judge Glenn T. Harrell, writing for this Court in *Armstrong v. Mayor and City Council of Baltimore*, 409 Md. 648, 976 A.2d 349 (2009), our most recent application of *Layton*, explored its historical antecedents, which we will not repeat here. In *Armstrong*, we reaffirmed the retrospective application of the law in land use and zoning cases:

> For the aforementioned reasons, we reaffirm the *Yorkdale* rule that a substantive change in relevant statutory law that takes place during the course of the litigation of a land use or zoning issue shall be retrospectively applied by appellate courts.

*Armstrong*, 409 Md. at 673, 976 A.2d at 364, quoting *Layton*, 399 Md. at 70, 922 A.2d at 596. We applied the *Layton* holding to a situation in which the Baltimore City Council had enacted an ordinance while litigation was pending in the Circuit Court, which amended the Zoning Code's definition of "parking lot" and thereby made it unnecessary for a property owner to obtain a conditional use ordinance to establish an accessory parking lot. We concluded that applying the enacted change in the ordinance retrospectively rendered moot the Petitioner's challenge to the issuance of the parking lot authorization without a validly enacted conditional use ordinance. In *Armstrong*, however, we were able to construe the new ordinance provision, without remand, because its effect, as intended by the City Council, was crystal clear. The present case is not so fortunate.

The Board of Appeals in the present case, in its findings, was necessarily concerned with application of the ordinance prior to its recent amendment, basing its decision on the previous definitions, as well as the former General Table of

Land Uses. Although the parties would like us to derive the findings from that which we have before us and make the determination ourselves, we shall decline to do so for a number of reasons. The administrative body should have an opportunity to consider and apply the local ordinance, as it now stands, in the exercise of its presumed expertise in such matters. Given the freshness of the legislative changes and the vigorous dispute between the parties as to the legislative intent of the changes and the legal effect to be given them on the facts here, any reviewing court (and the record) well may benefit in any future consideration of this dispute from the reasoning of the administrative body. Unlike in *Armstrong*, it is not beyond cavil here what the impact of the new ordinance may have on the outcome here.

**JUDGMENT OF THE CIRCUIT COURT VACATED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE BOARD OF APPEALS' DECISION AND REMAND THE CASE TO THE BOARD OF APPEALS FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. PARTIES ARE TO BEAR THE COSTS EQUALLY.**